# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **TERRI L. BUNNELL,** | |
| **Plaintiff,** | |
| vs. | CAUSE NO.  1:14-cv-1989-DKL-JMS |
| **CAROLYN W. COLVIN, Commissioner of Social Security,** | |
| **Defendant.** | |

### ENTRY

The plaintiff, Terri L. Bunnell, applied for disability-insurance benefits, supplemental-security-income disability benefits, and a declaration of a period of disability under the Social Security Act.  The defendant Commissioner of Social Security denied her applications and Ms. Bunnell now sues for judicial review of that denial.

### Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758

(7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A person will be determined to be disabled only if her impairments "are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or

2

whether she would be hired if she applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. 404.1525. If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite her impairment-related

3

physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if she can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned work level, then the grids may not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v.*

4

*Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

**Background**

Ms. Bunnell applied for D.I.B. and S.S.I. benefits, and a period of disability, in February, 2012. She alleged that her disability began ten years earlier, in January, 2002. After her applications were denied by the state agency on initial and reconsideration reviews, Ms. Bunnell requested a hearing before an administrative law judge of the Social Security Administration. That hearing occurred in August, 2013. Ms. Bunnell was represented by counsel at the hearing. The ALJ issued his decision denying Ms. Bunnell's claims in September, 2013. The Commissioner's Appeals Council denied Ms. Bunnell's request for it to review the ALJ's decision in November, 2014, which denial rendered the ALJ's decision the final decision of the Commissioner on Ms. Bunnell's claims and the one that the Court reviews.

The ALJ found that Ms. Bunnell was insured for D.I.B. and a period of disability only through December 31, 2006. Therefore, she was required to prove that she became disabled between January, 2002, her alleged onset date, and December 31, 2006. (R. 15.) In this suit, Ms. Bunnell does not assert a date-of-onset issue with the ALJ's determination. To be eligible for S.S.I. benefits, she was required only to prove that she was disabled between February, 29, 2012, the date that she filed her applications, and September 12, 2013, the date that the ALJ issued his decision.

At step one of the sequential evaluation process, the ALJ found that Ms. Bunnell has not engaged in substantial gainful activity since her alleged onset date in January, 2002. At step two, the ALJ found that Ms. Bunnell has the following severe impairments:

bilateral arch implants, Grave's disease, iron-deficiency anemia, borderline intellectual functioning, a generalized anxiety disorder, and a dependent personality disorder. At step three, the ALJ found that Ms. Bunnell's impairments, severe and non-severe, singly and in combination, do not meet or medically equal any of the conditions in the listing of impairments.

For the purposes of steps four and five, the ALJ determined Ms. Bunnell's residual functional capacity. He found that she has the R.F.C. for a range of light work with additional postural and mental restrictions.

At step four, the ALJ found that this defined R.F.C. prevents the performance of any of her past relevant work. At step five, the ALJ found, after considering her defined R.F.C. and vocational characteristics, and relying on the testimony of the vocational expert, that a significant number of jobs exist in the national economy that Ms. Bunnell can perform and that she is, therefore, not disabled.

## Discussion

Ms. Bunnell argues two errors in the ALJ's decision.

**1. Failure to articulate weights assigned to Dr. Smith's opinions.** Ms. Bunnell's counsel sent her to Thomas A. Smith, Ph.D., for a mental-status examination in order to support her application for disability benefits. Ms. Bunnell argues that, while the ALJ discussed Dr. Smith's report and his opinions, (R. 18, 19, 23), he explicitly evaluated and assigned a weight only to the doctor's Global Assessment of Functioning scores of 54

(current and highest past year) and did not evaluate the validity of, or the weights that he assigned to, the following opinions of Dr. Smith: **(1)** Ms. Bunnell will have difficulty remembering tasks requiring reproductions of what she has seen, (R. 349); **(2)** she will have difficulty remembering what she is shown to do or told to do, (*id.*); and **(3)** it is unlikely that she will be able to function very independently, especially with unfamiliar tasks, new procedures, and "in handling pressure," (*id.*). (*Plaintiff's Brief in Support of Complaint for Review* [doc. 17] ("*Brief*"), at 11.) Ms. Bunnell is correct that the ALJ did not specifically articulate his evaluation of the cited opinions of Dr. Smith.

Ms. Bunnell argues that the the ALJ's defined R.F.C. — "the wide range of light work the ALJ found Bunnell capable of performing" — is inconsistent with Dr. Smith's cited opinions; thus, it was crucial that the ALJ explicitly articulate his resolution of these inconsistencies. However, Ms. Bunnell does not identify which capabilities in the ALJ's R.F.C. are contradicted by Dr. Smith's opinions and the Court will not use its own judgment to compare the two. Relating to Ms. Bunnell's mental abilities, the ALJ's R.F.C. definition found that she was limited to performing **(1)** "simple routine tasks," **(2)** "attend, concentrate and persist for two hours at a time," **(3)** "no work requiring fluidity of speech or timely verbal responses," and **(4)** "no assembly line pace or strict production quotas." (R. 20.) No inconsistencies are self-evident, and it was Ms. Bunnell's burden to point out and explain them. Therefore, her argument is forfeited.

Alternatively, the Court concludes that the ALJ provided sufficient articulation to permit the Court to trace the path of his reasoning. *Colorado Interstate Gas Co. v. Federal*

8

*Power Commission*, 324 U.S. 581, 595 (1945).[2] The ALJ explained why he rejected Dr. Smith's G.A.F. scores, suggesting severe mental functional limitations. (R. 23.) While not explicitly weighting or evaluating Dr. Smith's opinions that Ms. Bunnell would have "a lot of difficulty" with tasks requiring fluidity of speech and timely verbal responses, (R. 23), the ALJ adopted and directly incorporated a complete restriction on those skills into his R.F.C. finding, (R. 20). He further restricted Ms. Bunnell to simple and routine tasks, concentrating and persisting for only two hours at a time, and no work involving an assembly-line pace or strict production quotas. These restrictions reasonably could accommodate the difficulties that Dr. Smith says that Ms. Bunnell has remembering what she has been told or shown and independently functioning on a job, especially with unfamiliar tasks, new procedures, and pressure. The ALJ also explained that he found Ms. Bunnell's high-school and college education, and the fact that she quit work as a legal file clerk in order to take care of her ailing parents, not because of any mental demands of the job, show that she is not as functionally impaired as she is asserted to be. (R. 24-25.)

Ms. Bunnell failed to adequately develop her argument that the ALJ failed to adequately articulate his evaluation of Dr. Smith's opinions regarding her functional limitations. Alternatively, the Court can discern that the ALJ fully credited some of Dr.

---

[2] Ms. Bunnell argued that the ALJ was required to comply with the Commissioner's regulation requiring articulating good reasons for the weights given to treating sources' opinions. 20 C.F.R. § 404.1527(c)(2). As the Commissioner pointed out, however, Dr. Smith was not a treating source, having only examined Ms. Bunnell for the purposes of her disability claim. There is no evidence of any treatment provided by Dr. Smith.

Smith's limitations in his R.F.C. finding and at least partially accommodated the other limitations by additional R.F.C. restrictions. The Court can discern that the ALJ found that record evidence showed that Ms. Bunnell is not as limited as she and others asserted that she is, and the Court concludes that substantial evidence supports those findings. Therefore, Ms. Bunnell has not shown that the ALJ failed to adequately articulate his consideration of Dr. Smith's opinions.

**2. Failure to address the effects of stress in the workplace.** Social Security Ruling 85-15 explains to the Commissioner's disability evaluators that persons can have highly individualized reactions to workplace stress and that those reactions can be exaggerated in persons with mental illnesses, making it difficult for them to meet the requirements of even low-stress jobs. Emphasizing the evidence showing that she has led a somewhat sheltered, low-stress life up to now, Ms. Bunnell argues that the ALJ failed to comply with the binding guidance of S.S.R. 85-15 when he failed to specifically address the implications of Dr. Smith's opinion that she is unlikely to function "very independently" in a workplace, especially with unfamiliar tasks, new procedures, "and in handling pressure." (*Brief*, at 13; R. 349.)

This argument is related to Ms. Bunnell's first argument. She argues here that "[t]here is no explanation given as to why the other restrictions noted by Dr. Smith were ignored or left out of the RFC . . ." and that "[t]he ALJ's opinion is silent as to this critical testimonial evidence." (*Brief*, at 14.) However, as explained above, the ALJ restricted Ms. Bunnell to unskilled light work, requiring little or no judgment; simple and routine tasks;

10

no assembly-line or production-quota work; and no speech fluidity or timely verbal responses. These restrictions obviously reduce the opportunities for stress and high levels of stress. Dr. Smith found it "unlikely" that Ms. Bunnell can function "very independently" in a workplace, "especially" one that is characterized by unfamiliar tasks, new procedures, and "in handling stress." He did not opine that she definitely could work only in a workplace with no stress at all. In addition, as noted above, Ms. Bunnell does not point out which of the ALJ's R.F.C. restrictions are inconsistent with Dr. Smith's limitations or explain why; she does not explain why the ALJ's restrictions do not adequately reduce the stress that she has difficulties handling; and she does not identify which jobs, or aspects of those jobs, that the vocational expert identified she could perform have stress that is inconsistent with her intolerances.

The Court can adequately discern the path of the ALJ's reasoning. He imposed substantial R.F.C. restrictions that reduced the stress that Ms. Bunnell would encounter. He explained why he found that Ms. Bunnell is not as limited as she claims. Ms. Bunnell does not explain which and why the ALJ's R.F.C. restrictions are inconsistent with Dr. Smith's limitations. Therefore, Ms. Bunnell has not shown error by the ALJ.

## Conclusion

Because Ms. Bunnell has not shown error by the ALJ, the Commissioner's decision denying her claims for benefits will be affirmed.

**DONE this date:** 03/31/2016

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.